**KLINE & SPECTER, P.C.**
BY: Thomas R. Kline, PA ID# 28895
    David K. Inscho, PA ID# 90267
    Lorraine H. Donnelly, PA ID# 93352
1525 Locust Street, Nineteenth Floor
Philadelphia, PA 19102
(215) 772-1000
*Attorneys for Plaintiffs*

_____

### IN THE COURT OF UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY CHINEA AND JULIO CHINEA, as Parents and Natural Guardians of S.C., a minor, c/o Kline & Specter, PC 1525 Locust Street, 19th Floor Philadelphia, PA  19102 <br><br>     *Plaintiffs*, <br><br>     v. <br><br> WOODWARD CAMP, INC. d/b/a WOODWARD GYMNASTICS CAMP a/k/a WOODWARD U 134 Sports Camp Drive Woodward, PA 16886    and WOODWARD PENNSYLVANIA, LLC, f/k/a POWDR – WOODWARD PA, LLC 134 Sports Camp Drive Woodward, PA 16886    and POWDR – WOODWARD CAMPS, LLC 134 Sports Camp Drive Woodward, PA 16886    and POWDR – WOODWARD HOLDINGS, LLC 134 Sports Camp Drive Woodward, PA 16886    and WOODWARD CAMP PROPERTIES, INC. 134 Sports Camp Drive Woodward, PA 16886    and | No. 4:22-cv-00134-MWB <br><br> *(Removed from the Court of Common Pleas of Centre County, Pennsylvania at Docket No. 2021-3086)* <br><br><br> **AMENDED COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

1

THE WOODWARD FOUNDATION
134 Sports Camp Drive
Woodward, PA 16886
    and
SPORTS MANAGEMENT GROUP, INC. d/b/a
WOODWARD GYMNASTICS CAMP
134 Sports Camp Drive
Woodward, PA 16886
    and
NATHANIEL SINGER
89 PLYMPTON STREET, APT. 8
MIDDLEBORO, MA  02346-2628
    and
BRITTANY SHULMAN
237 E. Whitehall Rd
State College, PA 16801

       *Defendants.*

## AMENDED CIVIL ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, Kelly Chinea and Julio Chinea, as Parents and Natural Guardians of S.C., a minor, by and through their undersigned counsel, Kline & Specter, hereby file this Amended Complaint, and complains of the above captioned Defendants as follows:

1.    This Complaint arises from the sexual assault of minor Plaintiff S.C. while at Woodward Gymnastics Camp by then coach Nathaniel Singer, who was placed in a position of power and authority over minor Plaintiff S.C. by the co-Defendants, collectively referred to as "Woodward Camp Defendants."

## PARTIES AND VENUE

2.    Plaintiffs Kelly Chinea and Julio Chinea, are Parents and Natural Guardians of S.C., a minor, and residents of the city of Westmont, in DuPage County in Illinois.

3.    Minor Plaintiff's full name is not contained in this pleading to protect her privacy since she is a minor and the victim of a sexual assault, and done in good faith to avoid additional

embarrassment and psychological harm.  Minor Plaintiff's identity is being made known to Defendants by separate communication.

4.      Defendant, Woodward Camp, Inc. d/b/a Woodward Gymnastics Camp a/k/a Woodward U, is a corporation and/or business entity organized under the laws of Pennsylvania with a principal place of business at 134 Sports Camp Drive, Woodward, PA 16886, which at all relevant times was in the business of operating, managing, marketing, and/or overseeing a global sports company that boasts state of the art facilities and programs to many of the world's top action sports and gymnastics athletes, including current and future Olympians, with multiple locations throughout the United States, Mexico and China, including a gymnastics camp known as "Woodward Gymnastics Camp" located at 134 Sports Camp Drive, Woodward, PA 16886.

5.      Woodward Pennsylvania, LLC f/k/a POWDR – Woodward PA, LLC is a corporation and/or business entity organized under the laws of Delaware with a principal place of business at 134 Sports Camp Drive, Woodward, PA 16886, which at all relevant times was in the business of operating, managing, marketing, and/or overseeing a global sports company that boasts state of the art facilities and programs to many of the world's top action sports and gymnastics athletes, including current and future Olympians, with multiple locations throughout the United States, Mexico and China, including a gymnastics camp known as "Woodward Gymnastics Camp" located at 134 Sports Camp Drive, Woodward, PA 16886.

6.      Defendant, Powdr – Woodward Camps, LLC, is a corporation and/or business entity organized under the laws of Delaware with a principal place of business at 134 Sports Camp Drive, Woodward, PA 16886, which at all relevant times was in the business of operating, managing, marketing, and/or overseeing a global sports company that boasts state of the art facilities and programs to many of the world's top action sports and gymnastics athletes,

including current and future Olympians, with multiple locations throughout the United States, Mexico and China, including a gymnastics camp known as "Woodward Gymnastics Camp" located at 134 Sports Camp Drive, Woodward, PA 16886.

7.     Defendant, Powdr – Woodward Holdings, LLC, is a corporation and/or business entity organized under the laws of Delaware with a principal place of business at 134 Sports Camp Drive, Woodward, PA 16886, which at all relevant times was in the business of operating, managing, marketing, and/or overseeing a global sports company that boasts state of the art facilities and programs to many of the world's top action sports and gymnastics athletes, including current and future Olympians, with multiple locations throughout the United States, Mexico and China, including a gymnastics camp known as "Woodward Gymnastics Camp" located at 134 Sports Camp Drive, Woodward, PA 16886.

8.     Defendant, Woodward Camp Properties, Inc., is a corporation and/or business entity organized under the laws of Pennsylvania with a principal place of business at 134 Sports Camp Drive, Woodward, PA 16886, which at all relevant times was in the business of operating, managing, marketing, and/or overseeing a global sports company that boasts state of the art facilities and programs to many of the world's top action sports and gymnastics athletes, including current and future Olympians, with multiple locations throughout the United States, Mexico and China, including a gymnastics camp known as "Woodward Gymnastics Camp" located at 134 Sports Camp Drive, Woodward, PA 16886.

9.     Defendant, The Woodward Foundation, is a corporation and/or business entity organized under the laws of Pennsylvania with a principal place of business at 134 Sports Camp Drive, Woodward, PA 16886, which at all relevant times was in the business of operating, managing, marketing, and/or overseeing a global sports company that boasts state of the art

facilities and programs to many of the world's top action sports and gymnastics athletes, including current and future Olympians, with multiple locations throughout the United States, Mexico and China, including a gymnastics camp known as "Woodward Gymnastics Camp" located at 134 Sports Camp Drive, Woodward, PA 16886.

10.     Defendant, Sports Management Group, Inc. d/b/a Woodward Gymnastics Camp is a corporation and/or business entity organized under the laws of Pennsylvania with a principal place of business at 134 Sports Camp Drive, Woodward, PA 16886, which at all relevant times was in the business of operating, managing, marketing, and/or overseeing a global sports company that boasts state of the art facilities and programs to many of the world's top action sports and gymnastics athletes, including current and future Olympians, with multiple locations throughout the United States, Mexico and China, including a gymnastics camp known as "Woodward Gymnastics Camp" located at 134 Sports Camp Drive, Woodward, PA 16886.

11.     At all relevant times hereto, Defendants, Woodward Camp, Inc. d/b/a Woodward Gymnastics Camp a/k/a Woodward U; Powdr – Woodward Pa, LLC; Powdr – Woodward Camps, LLC; Powdr – Woodward Holdings, LLC; Woodward Camp Properties, Inc.; The Woodward Foundation; Sports Management Group, Inc. d/b/a Woodward Gymnastics Camp (hereinafter "Woodward Camp Defendants") individually,  collectively, and/or through joint venture owned, operated, managed, marketed, and controlled a global sports company that boasts state of the art facilities and programs to many of the world's top action sports and gymnastics athletes, including current and future Olympians, with multiple locations throughout the United States, Mexico and China, including a gymnastics camp known as "Woodward Gymnastics Camp" located at 134 Sports Camp Drive, Woodward, PA 16886.

12.     Defendant, Nathaniel Singer, is an adult individual residing at 89 Plympton Street, Apt. 8 Middleboro, MA  02346-2628.

13.     At all relevant times herein, Defendant Nathaniel Singer was a gymnastics coach at Woodward Camp Defendants' gymnastics camp known as "Woodward Gymnastics Camp" located at 134 Sports Camp Drive, Woodward, PA 16886, and employed by the Woodward Camp Defendants.

14.     Defendant Brittany J. Shulman (nee Epps) is an adult individual residing at 237 E. Whitehall Road, State College, PA 16801.

15.     At all relevant times herein, Defendant Brittany Shulman was an administrator at the Woodward Gymnastics Camp and in charge of, among other things, the hiring, retention and supervision of the personnel for the camp, including Nathaniel Singer.

16.     At all times relevant herein, the Woodward Camp Defendants were acting by and through its officers, employees, servants, and agents including Matt Lea, Brittany Shulman, Gregory Frew, Pamela Velasquez, and Elizabeth Price, in the operation of the gymnastics camp known as "Woodward Gymnastics Camp" located at 134 Sports Camp Drive, Woodward, PA 16886, and the hiring, admitting, assigning, retaining, and supervising of employees, agents, servants, and coaches, including Defendant Nathaniel Singer.

17.     Accordingly, the Woodward Camp Defendants are not only directly liable for their own negligence, but also vicariously liable for the negligent acts and omissions of their employees, servants, agents, and coaches while engaged in the operation of the Woodward Gymnastics Camp, including Defendant Nathanial Singer, Matt Lea, Brittany Schulman, and Elizabeth Price, under theories of respondeat superior, master-servant, agency, and/or vicarious liability.

18.     Defendants are jointly and severally liable to Plaintiffs.

19.     Plaintiffs initiated this cause of action by filing a Complaint in Centre County, Pennsylvania, on December 21, 2021.

20.     Venue is properly laid in Centre County, Pennsylvania, pursuant to Pa.R.C.P. 1006 & 2156, as the cause of action arose in said county and Defendants' principal place of business and in which it regularly conducts business are in Centre County, Pennsylvania.

21.     On January 25, 2022, Defendant Woodward Pennsylvania, LLC f/k/a POWDR – Woodward PA, LLC removed this case from the Court of Common Pleas of Centre County Pennsylvania to the United States District Court for the Middle District of Pennsylvania.

22.     Plaintiffs file this Amended Complaint pursuant to F.R.C.P. 15(a)(1)(B).[1]

## FACTS GIVING RISE TO THE ACTION

23.     The previous paragraphs are incorporated herein by reference.

24.     The Woodward Camp Defendants offer an overnight, twelve-week summer gymnastics camp located at 134 Sports Camp Drive, Woodward, PA 16886 (hereinafter "Woodward Gymnastics Camp"), and promised skilled instructors and coaches who were "the best in the country" who "meet our high standards" and also promised instruction from special guest Olympians.

25.     The Woodward Camp Defendants also marketed that they put "safety first" at their gymnastics camp and recommended at least a two week stay at their facility that offered room and board.

---

[1] Plaintiffs are also filing a Motion to Remand in this matter under separate cover because it was improperly removed.

26.     The Woodward Camp Defendants described their typical day at the Woodward Gymnastics overnight camp to include instruction and activities intermixed with dining and recreational activities all from 7:30am until 10pm.

27.     In the summer of 2016, Woodward Camp Defendants employed Defendant Nathaniel Singer as one of the gymnastics coaches at the camp. He also worked as a disc-jockey (DJ) at the camp.

28.     Prior to the summer of 2016, Defendant Nathaniel Singer engaged in an intimate relationship with a minor female gymnast and Woodward Camper.

29.     During the summer of 2016, Defendant Nathaniel Singer engaged in several violations of camp policy with regard to interactions and isolating minor female campers, including taking them alone on golf cart rides and being alone with them in the D.J. booth.

30.     These violations were known and/or should have been known to camp administrators, including Defendant Brittany Shulman.  Ms. Shulman and the other administrators at Woodward Camp, failed to take any action against Defendant Singer to protect its minor campers.

31.     During the Summer of 2016, Defendant Singer pursued an intimate relationship with a female minor camper/junior counselor, referred herein as Jane Doe.[2]  Through the summer, Singer sent Jane Doe proactive photos of himself over snapchat, including photos of himself after showering.

32.     During the summer of 2016, Defendant Singer snuck Jane Doe out of her cabin in the middle of the night and sexually abused her on campgrounds.

---

[2] Because this minor camper was a victim of sexual abuse and exploitation by Nathaniel Singer, Plaintiff is utilizing a pseudonym.  Upon information and belief the identity of this victim is known to Defendants, but will be provided in discovery.

33.     Despite his having engaged in multiple violations of camp policy and having sexually abused a minor camper, the Woodward Camp Defendants and its administrators, including Defendant Brittany Shulman, rehired Defendant Singer as a gymnastic coach and DJ in the summer of 2017.

34.     During the summer of 2017, the Junior Camp Director at the Woodward Camp learned about Defendant's sexual abuse of Jane Doe the prior summer.  He reported the abuse to Woodward Camp Administrators, including Defendant Shulman.

35.     Defendant Singer admitted to Woodward Camp Administrators that he had sexual contact with the Jane Doe the prior summer when she was a minor camper.

36.     The Junior Counselor Director also informed Defendant Shulman that Defendant Singer had taken another minor camper off of campgrounds alone, another violation of camp policy.

37.     Woodward Administrators, including Defendant Shulman, failed to fire and remove Defendant Singer from the camp upon learning of his sexual abuse the prior summer and his repeated violations of camp policy in isolating and being alone with minor campers.

38.     Prior to the summer of 2018, the Woodward Camp Defendants and its administrators, including Defendant Brittany Shulman, rehired Nathaniel Singer as a gymnastics coach and D.J. at the camp, despite knowing about his sexual abuse on Jane Doe in the summer of 2016 and his repeated violations of camp policy.

39.     Defendant Shulman participated in the rehiring of Defendant Singer for the summer of 2018, despite knowing about his sexual abuse of Jane Doe, his repeated violations of camp policy, and the danger he posed to campers.

40.     The Junior Counselor Director who had previously reported Defendant Singer's sexual abuse and violations of camp policy, suggested to Defendant Shulman that Defendant Singer's interactions with minor campers be limited to protect them from Defendant Singer. Defendant Shulman and other Woodward Camp Administrators refused to do so.

41.     S.C. attended the Woodward Gymnastics Camp for week nine (9) of the 2017 summer camp without incident. Upon information and belief, Defendant Singer was not at Woodward that week.

42.     S.C. attended the Woodward Gymnastics Camp for weeks nine (9) and ten (10) in the summer of 2018. She was thirteen (13) years old that summer.

43.     Despite the Woodward Camp Administrators and Defendant Shulman knowing about Defendant Singer's history and danger he posed to minor campers, Singer was assigned as one of S.C.'s coaches.

44.     During week 10 of the 2018 summer camp, which was Saturday August 4, 2018 through Saturday August 11, 2018, Defendant Nathanial Singer began grooming S.C. by improperly touching her buttocks while spotting her during gymnastics activities.

45.     During the same week, Defendant Nathanial Singer progressed to slipping his finger into S.C.'s leotard and into her vagina while he spotted her on the bars and during a bar drill.

46.     S.C. did not report Defendant Nathanial Singer to anyone because she was scared. S.C. did not know that the Woodward Camp Administrators were already aware of Defendant Singer's propensity to abuse minor female campers.

47.     Prior to the summer of 2019, the Woodward Camp Defendants again rehired Defendant Singer as a gymnastics coach and D.J. at the camp, despite knowing about his sexual abuse on Jane Doe in the summer of 2016 and his repeated violations of camp policy.

48.     Defendant Shulman again participated in the rehiring of Defendant Singer for the summer of 2019, despite knowing about his sexual abuse of Jane Doe, his repeated violations of camp policy, and the danger he posed to campers.

49.     In the Summer of 2019, the Junior Counselor Director who had previously reported Defendant Singer's sexual abuse and violations of camp policy, again informed Woodward Camp Administrators, including Defendant Shulman and Pam Velasquez, that Singer posed a danger to the kids at the camp.  Defendant Shulman stated that she was fine with Defendant Singer working at the camp despite his past "mistakes."  Defendant Shulman and other Woodward Camp Administrators again failed to limit Singer's interaction with minor campers.

50.     In the summer of 2019, S.C. returned to Woodward Gymnastics Camp for week nine (9) of the twelve-week program, and Defendant Nathanial Singer was again one of the gymnastics coaches and DJ's. S.C. was fourteen years old at that time.

51.     During week 9 of 2019 summer camp, Defendant Nathanial Singer again improperly touched S.C.'s buttocks during spotting and in open gym.

52.     During the same week, Defendant Nathanial Singer again progressed to slipping his finger into S.C.'s leotard and into her vagina while he spotted her on the bars.

53.     This time S.C. said to Defendant Nathanial Singer, "you spotted me weird." Defendant Nathanial Singer replied, "that is how I spot this drill."

54.     That same week, Defendant Nathanial Singer again slipped his finger into S.C.'s leotard and into her vagina while spotting her.

55.     Later that same week, Defendant Nathanial Singer tried to corner S.C. in a hallway and close the door, but S.C. was able to push the door open and walk back out the beam area where other coaches were located.

56.     That same week, Defendant Nathanial Singer tried for a second time to corner S.C. alone in a hallway but S.C. was able to push past him and get away.

57.     S.C. reported to head coach Matt Lea that Coach Nathanial Singer was spotting her inappropriately and that he made her uncomfortable.

58.     Coach Matt Lea reported S.C.'s allegations about Coach Nathanial Singer to the Defendant Schulman, and her assistant, Elizabeth Price.

59.     S.C. then reported to Defendant Shulman, and her assistant, Elizabeth Price that Coach Nathanial Singer was spotting her inappropriately, that he made her uncomfortable, and that it hurt her when he did it.

60.     Rather than provide assistance to this 14-year-old girl who reported being sexually assaulted by one of the Woodward Gymnastics Camps coaches, Elizabeth Price and Brittany Shulman secluded S.C. alone in a conference room and interrogated S.C. about the report of abuse, challenged her credibility, and advised her not to ruin Nathanial Singer's reputation and to stop spreading rumors. They also threatened that if she continued to talk about Singer's assault that it would wreck her chance of being a gymnast in college.

61.     Defendant Shulman's treatment of S.C. after she reported Singer's abuse, while in a position of power over S.C., who was a minor girl, and while knowing that Singer had actually abused minor campers in the past, was extreme and outrageous.

62.    S.C. suggested that coach Brittany Schulman, and Elizabeth Price review the camera footage at the facility as there were cameras everywhere, but they claimed that they were already recorded over.

63.    Head coach Matt Lea, Defendant Schulman, and Elizabeth Price were all mandatory reporters, but failed to report S.C.'s allegations of sexual abuse to the police or other law enforcement.

64.    S.C. also witnessed Nathanial Singer use inappropriate spotting techniques by touching the buttocks of other girls at Woodward Gymnastics camp in 2018 and 2019.

65.    Other campers also discussed that Singer was inappropriate generally and in the way he spotted them.

66.    Other coaches and staff at Woodward Camp, beyond those discussed above, were concerned about Singer's behavior with campers and raised issues with camp administrators, including Defendant Shulman, prior the assaults on S.C.

67.    Defendant Nathanial Singer was suspended for sexual misconduct by USA Gymnastics and/or the U.S. Center for SafeSport as of July of 2020 and given a "no contact directive" as of May 27, 2021.

68.    Upon information and belief, the reason Defendant Nathanial Singer was suspended was because he had an inappropriate sexual relationship with a minor camper prior Singer's abuse of S.C.

69.    Despite being aware of the report of sexual abuse committed by coach Nathanial Singer on S.C., a minor, the Woodward Camp Defendants continued to disregard this known risk, and failed to act to protect children, including S.C.

70.     In addition to failing to act, the Woodward camp Defendants and its leadership, including Defendant Shulman, failed to report the sexual abuse to law enforcement authorities, thus facilitating sexual abuse of children.

71.     The negligence, recklessness, and outrageous conduct of Defendant Nathanial Singer, Defendant Shulman, and the Woodward Camp Defendants and their agents and/or employees was a factual cause of S.C.'s harm and was a substantial factor in causing and did directly proximately cause the severe, permanent, and grievous injuries and damages, including:

    a.  Mental anguish, humiliation, pain, suffering, and emotional trauma from being sexually assaulted as a child;

    b.  Additional mental anguish, pain, suffering, humiliation, and emotional trauma from being sexually assaulted by an adult coach of a sport that S.C. loved and excelled in, with potential to obtain gymnastics scholarships for college;

    c.  Additional mental anguish, pain, suffering, humiliation, and emotional trauma from being interrogated, shamed, and threatened by other adults in positions of authority and power at the Woodward Gymnastics Camp after S.C. reported the sexual abuse,

    d.  Additional mental anguish, pain, suffering, humiliation, and emotional trauma due to the failure of adults in positions of authority and power at the Woodward Gymnastics Camp to report this allegation of abuse to law enforcement;

    e.  Post-Traumatic Stress Disorder ("PTSD");

    f.  night terrors;

    g.  fear;

    h.  flashbacks;

    i.  panic attacks;

    j.  costs associated with mental health treatment;

    k.  intense psychological distress;

    l.  past and future economic loss;

14

    m.  past and future embarrassment and humiliation;

    n.  past and future pain and suffering, mental anguish and loss of life's pleasures;

    o.  other physical, economic, and psychological injuries, some of which may be permanent, arising of the sexual assaults.

72.    As set forth more fully below, the negligence, recklessness, and outrageous conduct of the Defendants was a direct and proximate cause of harm to S.C.

73.    Plaintiff S.C.'s injuries were caused solely by the negligence, recklessness, and outrageous conduct of the Defendants, as set forth more fully herein, and were not caused or contributed thereto by any negligence on the part of the Plaintiff S.C.

## COUNT I - NEGLIGENCE

**Plaintiffs v. Defendants, Woodward Camp, Inc. d/b/a
Woodward Gymnastics Camp a/k/a Woodward U; Woodward Pennsylvania, LLC
f/k/a Powdr – Woodward Pa, LLC; Powdr – Woodward Camps, LLC; Powdr –
Woodward Holdings, LLC; Woodward Camp Properties, Inc.; The Woodward
Foundation; Sports Management Group, Inc. d/b/a Woodward Gymnastics Camp
("Woodward Camp Defendants") and Defendant Brittany Shulman**

74.    The previous paragraphs are incorporated herein by reference.

75.    The negligence, recklessness, and outrageous conduct of Defendants include:

    a.  Negligently and/or recklessly failing to observe and supervise coach Nathanial Singer;

    b.  Negligently and/or recklessly failing to recognize Nathanial Singer's conduct described herein as creating a risk of sexual abuse of children;

    c.  Negligently and/or recklessly failing to have policies and procedures to require supervision and observation of coaches, including Nathanial Singer and S.C.;

    d.  Negligently and/or recklessly failing to identify Nathanial Singer as a sexual abuser;

    e.  Negligently and/or recklessly failing to investigate behavior of Nathanial Singer that put the Woodward Camp Defendants on notice that Nathanial Singer was a potential pedophile;

    f.  Negligently and/or recklessly failing to have policies and procedures in place

to screen coaches, including Nathanial Singer, for the possibility of being sexual predators;

g.  Negligently and/or recklessly failing to remove or suspend Nathanial Singer from active coaching immediately when S.C. reported the assault;

h.  Negligently and/or recklessly allowing Nathanial Singer to continue in active coaching at the Woodward Camps where he had access and authority over children;

i.  Failure to use reasonable and due care under the circumstances; and

j.  Negligence and recklessness as may be proven from facts now exclusively in the possession of Defendants, which may be ascertained after the filing of this Complaint.

**WHEREFORE**, Plaintiffs demand damages, including punitive damages, against all Defendants, jointly and severally, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

### COUNT II - NEGLIGENT SUPERVISION

**Plaintiffs v. Defendants, Woodward Camp, Inc. d/b/a Woodward Gymnastics Camp a/k/a Woodward U; Woodward Pennsylvania, LLC f/k/a Powdr – Woodward Pa, LLC; Powdr – Woodward Camps, LLC; Powdr – Woodward Holdings, LLC; Woodward Camp Properties, Inc.; The Woodward Foundation; Sports Management Group, Inc. d/b/a Woodward Gymnastics Camp ("Woodward Camp Defendants") and Defendant Brittany Shulman**

76.  The previous paragraphs are incorporated herein by reference.

77.  Defendants had a duty to use reasonable care in selecting, supervising, and controlling employees.

78.  Defendants knew that it was placing coaches, including Nathanial Singer, in a special relationship of trust with children, a vulnerable group, while acting in the course of their duties at the Woodward Gymnastics Camp.

79.  Defendants knew it was placing coaches, including Nathanial Singer, in a position where they would have the opportunity to commit harm to children, including S.C.

80.    Defendants knew that it had the ability to supervise and control its coaches, including Nathanial Singer.

81.    Prior the abuse of S.C. Defendants knew that Nathaniel Singer had sexually abused a minor camper and committed multiple violations of camp policy by improperly being along with and isolating minor-campers.

82.    Prior the abuse of S.C. Defendants had been specifically warned of the danger Singer posed to minor-campers and the need to supervise him.

83.    Defendants knew it was in a position to supervise its coaches, including Nathanial Singer, to prevent further acts of harm and sexual abuse.

84.    Defendants knew or should have known that its coaches could harm children, including S.C., even if acting outside of their coaching duties.

85.    The negligence and recklessness of Defendants in the supervision of Nathanial Singer consist of one or more of the following:

    a.  Failing to use due care in supervising Nathanial Singer's interaction with children;

    b.  Failing to ensure that Nathanial Singer was not alone with a child and/or children;

    c.  Failing to ensure that Nathanial Singer was using appropriate spotting techniques with the gymnasts;

    d.  Failing to investigate and supervise Nathanial Singer in light of reports that he had sexually abused S.C.;

    e.  Failing to discipline Nathanial Singer;

    f.  Failing to educate and train Nathanial Singer  and other coaches, about appropriate spotting techniques;

    g.  Failing to educate and train Nathanial Singer, head coaches, camp administrators, and other employees about recognizing signs of possible sexual abuse and a mechanism to report suspected sexual abuse;

   h.   Failing to educate campers and gymnasts, including S.C., regarding appropriate versus inappropriate conduct by adults and coaches and to report inappropriate behavior to law enforcement;

   i.   Failing to share with law enforcement reports of sexual abuse within the Woodward Gymnastics Camp, including Nathanial Singer;

86.    Defendants did not attempt to prevent the foreseeable harm, and instead took a course of conduct that increased the risk that coaches could harm minors, including Nathanial Singer harming S.C.

87.    Defendants actively concealed and/or ignored Nathanial Singer inappropriate and pedophiliac behaviors.

88.    Defendants were in a position to prevent the harm Nathanial Singer inflicted on S.C., yet failed to prevent such harm.

89.    When S.C. reported the sexual abuse of Nathanial Singer to Defendants through their agents, Defendants compounded the harm by silencing and threatening S.C.

**WHEREFORE**, Plaintiffs demand damages, including punitive damages, against all Defendants, jointly and severally, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

### COUNT III - NEGLIGENT HIRING AND RETENTION

**Plaintiffs v. Defendants, Woodward Camp, Inc. d/b/a
Woodward Gymnastics Camp a/k/a Woodward U; Woodward Pennsylvania, LLC
f/k/a Powdr – Woodward Pa, LLC; Powdr – Woodward Camps, LLC; Powdr –
Woodward Holdings, LLC; Woodward Camp Properties, Inc.; The Woodward
Foundation; Sports Management Group, Inc. d/b/a Woodward Gymnastics Camp
("Woodward Camp Defendants") and Defendant Brittany Shulman**

90.    The previous paragraphs are incorporated herein by reference.

91.    Defendants knew prior to 2018 that S.C. and other young children in its camps were vulnerable and potential victims of sexual abuse.

92.     Defendants also knew prior to 2018 that the access to vulnerable youths and the physical contact required by gymnastic coaches when spotting gymnasts makes being gymnastics coach an enticing vocation to pedophiles and others seeking to abuse and exploit children.

93.     Defendants owed a duty to exercise reasonable care in the selection and retention of coaches in Woodward Gymnastics Camp, and specifically a duty to remain vigilant with respect to possible pedophiles and others seeking to abuse and exploit children.

94.     Prior to the abuse of S.C., Defendants had actual knowledge that Nathaniel Singer's sexual abuse of minor campers, his repeated violations of camp policy in being alone with and isolating minor campers, and the danger he posed to minor campers.

95.     Prior to the abuse of S.C., Defendants were specifically warned by at least one member of their staff of the danger Nathaniel Singer posed to minor campers.

96.     Defendants failed to exercise reasonable care in the selection of and retention of Nathanial Singer as a gymnastics coach, by among other things, the following:

a.   Failing to perform a thorough background check and investigation for its coaches, including Nathanial Singer;

b.   Failing to investigate Nathanial Singer history of sexual impropriety;

c.   Failing to investigate whether Nathanial Singer had any inappropriate  sexual interest in minors;

d.   Failing to investigate whether Nathanial Singer had a pattern of grooming and isolating young girls;

e.   Failing to use due care in the selection of Nathanial Singer as a gymnastics coach who would be coaching minors;

f.   Failing to use due care in the retention of Nathanial Singer as a gymnastics coach who would be coaching minors;

g.  Failing to terminate Nathanial Singer and/or remove him from the position of gymnastics coach after learning of his prior sexual abuse of minor-camper, repeated violations of camp policy in being alone with and isolating minor campers, and the danger he posed to minor campers;

h.  Rehiring Nathaniel Singer as a Gymnastic Coach for the Summer of 2018 despite knowing of his prior sexual abuse of minor-camper, repeated violations of camp policy in being alone with and isolating minor campers, and the danger he posed to minor campers;

i.  Rehiring Nathaniel Singer as a Gymnastic Coach for the Summer of 2019 despite knowing of his prior sexual abuse of minor-camper, repeated violations of camp policy in being alone with and isolating minor campers, and the danger he posed to minor campers

**WHEREFORE**, Plaintiffs demand damages against all Defendants, including punitive damages, jointly and severally, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

## COUNT IV - VICARIOUS LIABILITY

**Plaintiffs v. Defendants, Woodward Camp, Inc. d/b/a Woodward Gymnastics Camp a/k/a Woodward U; Woodward Pennsylvania, LLC f/k/a Powdr – Woodward Pa, LLC; Powdr – Woodward Camps, LLC; Powdr – Woodward Holdings, LLC; Woodward Camp Properties, Inc.; The Woodward Foundation; Sports Management Group, Inc. d/b/a Woodward Gymnastics Camp ("Woodward Camp Defendants")**

69.  The previous paragraphs are incorporated herein by reference.

70.  Defendant is vicariously liable for the actions described herein of its agents, servants, and/or employees, including, but not limited to, Matt Lea, Gregory Frew, Pamela Velasquez, Elizabeth Price and Defendants Brittany Shulman and Nathanial Singer.

71.  The sexual assaults occurred while Nathanial Singer was performing his duties as a gymnastics coach, including spotting the gymnasts.

72.  The sexual assaults occurred while Nathanial Singer was a gymnastics coach at the Woodward Gymnastics Camp's overnight summer camp, and thus occurred within the authorized time and space limits of his employment with the Woodward Camp Defendants.

73.     Defendants were aware of Nathaniel Singer's prior misconduct with Minor Campers and his propensity to sexual abuse minor campers.

74.     Defendants rehired Nathaniel Singer in the Summer of 2018, knowing of his prior sexual abuse of campers and ratifying and adopting any conduct by Defendant Singer that may have otherwise exceeded the scope of his agency.

75.     Defendants again rehired Nathaniel Singer in the Summer of 2019, knowing of his prior sexual abuse of campers and ratifying and adopting any conduct by Defendant Singer that may have otherwise exceeded the scope of his agency.

76.     The actions and/or omissions of Defendants and their agents, servants, and/or employees and administrators, including Matt Lea, Gregory Frew, Pamela Velasquez, Elizabeth Price and Defendants Brittany Shulman and Nathanial Singer, were a factual cause of and/or placed Plaintiff S.C. at an increased risk of harm for and/or was a substantial factor in causing, and did directly and proximately cause the harm suffered described herein by Plaintiff S.C.

77.     Defendants are liable for the negligent conduct of any and all agents, ostensible agents, servants, and/or employees, including Matt Lea, Gregory Frew, Pamela Velasquez, Elizabeth Price and Defendants Brittany Shulman and Nathanial Singer as described herein pursuant to principles of agency, vicarious liability, and/or *respondeat superior*.

**WHEREFORE**, Plaintiffs demand damages against all Defendants, jointly and severally, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

## COUNT V – ASSAULT AND BATTERY
### Defendant Nathanial Singer

78.     The previous paragraphs are incorporated herein by reference.

21

79.    The aforementioned conduct by Defendant Nathanial Singer inflicted upon S.C. while at the Woodward Gymnastics Camp in the summer of 2018 and 2019, constitute sexual assault and physical battery.

80.    As a result of Defendant Nathanial Singer's repeated acts of sexual assault and physical battery, S.C. was caused to suffer painful physical, metal, and emotional harm as outlined above.

**WHEREFORE**, Plaintiffs demand damages against all Defendants, jointly and severally, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

### COUNT VI- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**Plaintiffs v. Defendants, Woodward Camp, Inc. d/b/a
Woodward Gymnastics Camp a/k/a Woodward U; Woodward Pennsylvania, LLC
f/k/a Powdr – Woodward Pa, LLC; Powdr – Woodward Camps, LLC; Powdr –
Woodward Holdings, LLC; Woodward Camp Properties, Inc.; The Woodward
Foundation; Sports Management Group, Inc. d/b/a Woodward Gymnastics Camp
("Woodward Camp Defendants") and Defendant Brittany Shulman**

81.    The preceding paragraphs of this Complaint are incorporated as though fully set forth therein.

82.    Defendants through their agents and employees, Defendant Shulman and other Woodward Camp Administrators, not only permitted Defendant Singer to sexually abuse her which they were charged with protecting her, but further traumatized her by interrogating her and pressuring her to keep quiet about her abuse.

83.    Defendants through their agents and employees, Defendant Shulman and other Woodward Camp Administrators, intentionally inflicted emotional distress on S.C. by interrogating her without the presence of a parent and using their positions of power and authority to pressure her to not reveal the allegations against Nathaniel Singer.

84.     Defendant Shulman and the other Camp Administrators secluded and pressured S.C. despite knowing that Nathaniel Singer had previously sexually abused another minor camper.

85.     Defendant Shulman and the other Camp Administrators intentionally manipulated S.C. into not coming forward regarding the abuse she suffered at Woodward Camp by stating that the allegations would ruin Defendant Singer's reputation when they knew Defendant Singer had previously abused another minor camper and the Woodward Administrators had failed to report it.

86.     Defendant Shulman and the other Camp Administrators intentionally attempted to cover up the Nathaniel Singer's abuse of Jane Doe and S.C..

87.     The aforementioned conduct of the Woodward Camp Defendants, by and through Defendant Shulman and other camp administrators was extreme and outrageous.

88.     As a direct and proximate result of the intentional conduct of Woodward Camp Defendants, by and through Defendant Shulman and other camp administrators, S.C. was caused to suffer severe emotional distress as described herein, including panic attacks, night terrors, and PTSD.

**WHEREFORE**, Plaintiffs demand damages against all Defendants, jointly and severally, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

Respectfully Submitted,

**KLINE & SPECTER**

BY:   *Lorraine H. Donnelly /s/*
      THOMAS R. KLINE
      DAVID K. INSCHO
      LORRAINE H. DONNELLY
Date:   2/9/2022          *Attorneys for Plaintiffs*